United States District Court
Southern District of Texas
**ENTERED**
July 03, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JUSTIN TYLER DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-110 |
| | § | |
| KRISTEN ZAMBRANO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff Justin Tyler Davis's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott,* 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's deliberate indifference claims be retained against one defendant in her individual capacity. It is

respectfully recommended further that: (1) Plaintiff's claims for money damages against certain defendants in their official capacities be dismissed as barred by the Eleventh Amendment; (2) Plaintiff's claims for injunctive relief against certain defendants be dismissed as rendered moot by Plaintiff's transfer to another facility; and (3) Plaintiff's remaining claims against all Defendants be dismissed as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.     JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.    BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the Clements Unit in Amarillo, Texas.  Plaintiff was convicted in Brazos County on numerous charges of possession of child pornography, aggravated assault with a deadly weapon, possession of a firearm as a convicted felon, and unlawful restraint of a child.  He was sentenced for these convictions on September 21, 2010 and March 23, 2001, respectively.

The facts giving rise to Plaintiff's claims in this civil rights action occurred in connection with Plaintiff's previous assignment to the McConnell Unit in Beeville, Texas.  Plaintiff filed his original complaint on April 23, 2018, naming the following defendants: (1) McConnell Unit Sergeant Kristen Zambrano in her individual capacity only; (2) McConnell Unit Assistant Warden Kenneth Putnam in his individual and official capacity; (3) McConnell Unit Assistant Warden Corey Furr in his individual and

official capacity; (4) TDCJ Assistant Regional Director Patricia Chapa in her individual and official capacity; and (5) TDCJ Executive Director Bryan Collier in his official capacity only. (D.E. 1-1, pp. 2-3). Plaintiff seeks declaratory, injunctive, and monetary relief. (D.E. 1-1, p. 10).

On May 30, 2018, a *Spears*[1] hearing was conducted where Plaintiff was given an opportunity to explain his claims. The following allegations were made in Plaintiff's original complaint (D.E. 1) or at the hearing.

On August 3, 2016, several inmates at another prison unit assaulted Plaintiff by beating and stabbing him eighteen times in his arms and legs. Plaintiff was transported to the hospital where six of his stab wounds required stapling to close them. After prison medical staff issued Plaintiff a walking cane for a temporary period of time, he was subsequently reassigned to the McConnell Unit in early October, 2016 to protect his safety. A pass to carry the walking cane was taped onto the walking cane.

Plaintiff was in G5 custody status at the time he arrived at the McConnell Unit. This restrictive custody status requires prisoners like Plaintiff to be housed in a cell 22 hours a day and to be handcuffed when transported to recreation, medical, or the showers. Before October 6, 2016, Plaintiff had not come into contact with Sergeant Zambrano. In addition, McConnell Unit officers had not ordered Plaintiff to be handcuffed behind his back for transportation between the time he arrived at the unit and October 6, 2016.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985*); see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Officers also allowed Plaintiff to use his walking cane during transportation and to shower without being handcuffed.

On October 6, 2016, while Plaintiff was transported to the showers, McConnell Unit officers ordered Plaintiff to be handcuffed behind his back. Plaintiff asked for a supervisor, causing Sergeant Zambrano to arrive at the scene. Plaintiff explained to Sergeant Zambrano that he had medical issues involving his legs leading to the issuance of his walking cane. After reaffirming the order for Plaintiff to be handcuffed behind his back, Sergeant Zambrano assured Plaintiff that he would be supported while showering. Sergeant Zambrano further threatened Plaintiff with a disciplinary action for failure to obey orders.

Plaintiff attempted to comply with Sergeant Zambrano's order out of fear of facing a disciplinary proceeding. With his hands cuffed behind his back, Plaintiff could not carry his walking cane. His walking cane fell to the floor. Plaintiff felt a sharp pain in his leg after he tried to take a step, causing him to lose control and fall down to the floor. None of the officers attempted to prevent Plaintiff from falling to the floor. Sergeant Zambrano ordered other prison staff officials to roll Plaintiff over, resulting in officers pulling and holding Plaintiff's handcuffed arm at an unnatural angle. These actions caused Plaintiff further pain to his rotator cuff, which had been injured in connection with the August 3, 2016 attack.

Officers kept Plaintiff in this painful position until medical staff arrived and transported Plaintiff to the unit's infirmary. The unit's doctor examined Plaintiff and

implemented additional restrictions due to his medical condition. Plaintiff's permit to carry his walking cane was still valid at this time.

After he was discharged from the medical unit later that day on October 6, 2016, Plaintiff returned to his cell. Plaintiff's cell mate refused to comply with the officers' orders to allow Plaintiff back into the cell and made a threatening statement directed to Plaintiff because he had knowledge of Plaintiff's past criminal history. Rather than lock up his cell mate for making a threat, Sergeant Zambrano ordered Plaintiff to be taken to administrative segregation for safety purposes. Plaintiff's property was packed for Plaintiff's move to segregation. Upon unpacking his personal property in segregation, Plaintiff discovered that some of his property was missing. Plaintiff was informed that he would either receive his property or the property forms documenting his missing property. Plaintiff, however, never received any documentation with respect to his missing property.

Plaintiff eventually learned that Sergeant Zambrano had instructed officers at the time he was taken to medical on October 6, 2016 to "tear his cell up," which meant the destruction of Plaintiff's personal property. Certain personal property owned by Plaintiff was then confiscated and/or destroyed. Sergeant Zambrano also instructed officers to leave Plaintiff's confidential legal documents in plain view so that his cell mate could see them. By having ample opportunity to read Plaintiff's legal materials, his cell mate discovered Plaintiff's convictions for possession of child pornography. Plaintiff's cell mate then spread the word around the cell block about Plaintiff's prior convictions.

After Plaintiff was locked up in segregation, Sergeant Zambrano used the "Inventory Process" to destroy additional personal property owned by Plaintiff. Plaintiff was released from segregation more than one month later and was returned to his same cell block. Several offenders in Plaintiff's cell block were talking about how Plaintiff was a convicted sexual offender and was, therefore, scared into requesting segregation for his safety.

After the unit's lockdown had ended, Plaintiff went outside for recreation. Several inmates who had knowledge of Plaintiff's convictions approached Plaintiff and attempted to extort Plaintiff. The attempted extortion caused a riot on November 26, 2016 involving more than fifty individuals. Plaintiff was beaten, stomped, and kicked in multiple instances during the riot by unknown inmates. Plaintiff believes that his injuries arose from Sergeant Zambrano's decision to tear up Plaintiff's cell and expose his legal documents to his cell mate.

Plaintiff filed three sets of grievances challenged the handcuffing incident on October 6, 2016, his disciplinary conviction, and the taking of his personal property. First, on October 8, 2016, Plaintiff filed a Step 1 grievance challenging the actions of Sergeant Zambrano and other officers in ordering Plaintiff to be handcuffed behind his back despite his serious medical condition. (D.E. 1-1, pp. 16-17). In rejecting Plaintiff's Step 1 grievance, Assistant Warden Putnam found no evidence to substantiate Plaintiff's allegation of staff misconduct. (D.E. 1-1, p. 17). Plaintiff's Step 2 grievance on this issue was denied by Assistant Regional Director Chapa. (D.E. 1-1, p. 19).

Second, several days after Plaintiff filed his first grievance against Sergeant Zambrano, Plaintiff received notice that Sergeant Zambrano had filed a disciplinary action against Plaintiff (Disciplinary Case No. 20170041242), which charged Plaintiff with refusing to obey Sergeant Zambrano's direct order on October 6, 2016.  Plaintiff testified, however, that he did not believe Sergeant Zambrano filed the disciplinary case in retaliation for the filing of Plaintiff's grievance against her.  Plaintiff was found guilty of the charge and received punishment in the form of loss of recreation and commissary for 45 days, 45 days cell restriction, and a drop in his line class status.  Plaintiff could not recall whether he lost any good time credits.  Plaintiff subsequently filed Step 1 and Step 2 grievances appealing the guilty finding in the disciplinary case.  (D.E. 1-1, pp. 20-23).  Plaintiff's guilty finding was overturned in his Step 2 grievance.  (D.E. 1-1, p. 23).

Third, with regard to his personal property, Plaintiff filed a Step 1 grievance (Grievance No. 2017027445), in which Sergeant Zambrano apparently admitted to a policy violation regarding the taking of Plaintiff's personal property.  In rejecting the grievance, however, Assistant Warden Furr stated that the personal property in question was deemed to be trash "due to no offender identification being visible and the alteration of the magazines."  (D.E. 1-1, p. 13).  Plaintiff's Step 2 grievance on this issue was denied by Assistant Regional Director Chapa.  (D.E. 1-1, p.15).  Plaintiff did not file a state court lawsuit either to seek return of his missing property or money damages for lost property.

Plaintiff stated in his original complaint that he seeks declaratory, injunctive, and monetary relief.  Plaintiff specifically seeks injunctive relief against TDCJ Executive

Director Collier in the form of changing a TDCJ rule pertaining to the confiscation of personal property from offenders. (D.E. 1-1, p. 10). Plaintiff testified that he believes Executive Director Collier is the proper defendant to sue in order to change the rule regarding the open-ended determination of contraband as any item altered from its original condition. Plaintiff testified that the rule regarding contraband should be changed to any item altered or changed from its original condition that jeopardizes the safety and security of the institution.

### III. LEGAL STANDARD.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).

A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an

indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).

## IV. DISCUSSION

### A. Official Capacity Claims

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver*, 276 F.3d at 742 (recognizing that the Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues Defendants Putnam, Furr, Chapa, and Collier in his or her official capacities for money damages, those claims are barred by the Eleventh Amendment. Accordingly, it is respectfully recommended that Plaintiff's claims for

money damages against these defendants in their official capacities be dismissed with prejudice.

### B. Claims for Injunctive Relief

Claims for declaratory and injunctive relief based on the conditions of confinement at the McConnell Unit are rendered moot upon prisoner's release from custody or transfer to another facility. *Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)). Furthermore, the possibility of Plaintiff's return to the McConnell Unit is much too speculative to warrant relief. *Id.* Because Plaintiff is no longer incarcerated at the McConnell Unit, it is respectfully recommended that his claims for declaratory and injunctive relief against Defendants Zambrano, Putnam, Furr, and Chapa be dismissed.[2]

### C. Supervisory Defendants

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he

---

[2] Plaintiff specifically seeks injunctive relief against TDCJ Executive Director Collier in the form of changing a TDCJ rule pertaining to the confiscation of personal property from offenders. Such requested relief is not barred against Executive Director Collier, who is the state official responsible for enforcing a challenged state rule or policy. *See Strickland v. Texas Dept. of Crim. Justice*, No. 3:10-CV-411, 2013 WL 6835242, at *1 (S.D. Tex. Dec. 23, 2013).

implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

Accepting Plaintiff's allegations as true, they indicate that Executive Director Collier had no knowledge of Plaintiff's various complaints. While suggesting that Defendants Putnam, Furr, and Chapa had knowledge of Plaintiff's issues through the grievance process, Plaintiff alleges nothing to suggest that these defendants had any personal involvement in these matters. Plaintiff, therefore, has failed to allege any plausible claims against Defendants Putnam, Furr, Chapa, and Collier in their roles as supervisory officials.

Plaintiff's allegations against Defendants Putnam, Furr, and Chapa center on his dissatisfaction with their decisions to reject Plaintiff's various grievances. Such allegations, however, fail to state a cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances). Accordingly, it is respectfully

recommended that Plaintiff's claims against Defendants Putnam, Furr, and Chapa be dismissed with prejudice.[3]

### D. Deliberate Indifference to Health and Safety

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)). Prison officials are required to must provide humane conditions of confinement and ensure that inmates receive adequate food, water, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Flores v. TDCJ Transitorial Planning Dept.*, No. 2:14-CV-283, 2015 WL 10436114, at *2 (S.D. Tex. Nov. 17, 2015).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove

---

[3] While Plaintiff fails to state a claim against Executive Director Collier in his supervisory capacity, the undersigned will address in detail below whether Plaintiff has stated a claim against Executive Director Collier regarding his role as policymaker in connection with Plaintiff's personal property allegations.

the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. "Even proof of gross negligence does not establish deliberate indifference." *Levine v. Taylor*, No. 3:12-CV-186, 2017 WL 1215426, at *7 (S.D. Tex. Mar. 31, 2017) (citing *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013)).[4]

Plaintiff alleges that Sergeant Zambrano acted with deliberate indifference to Plaintiff's health and safety when she: (1) ordered Plaintiff to be handcuffed with his hands behind his back on October 6, 2016, despite knowing Plaintiff had serious medical issues and needed to hold his walking cane for balance; (2) ordered officials to roll Plaintiff over on his side after he had fallen down, resulting in officers pulling and holding Plaintiff's handcuffed arm at an unnatural angle; and (3) ordered officials to leave Plaintiff's confidential legal mail exposed so that his cell mate and other inmates in his housing section could discover that he had been convicted for possessing child pornography.

---

[4] The Fifth Circuit has clarified that "gross negligence . . . is a heightened degree of negligence, while [deliberate indifference] is a lesser form of intent." *Whitley*, 726 F.3d at 641 (internal quotations and citation omitted).

Plaintiff's allegations, accepted as true, indicate that Sergeant Zambrano's exposed him to a substantial risk of serious harm by ordering him handcuffed behind his back and exposing his criminal history to other inmates in his cell block. Plaintiff's allegations further suggest that Sergeant Zambrano was aware of the serious risk of substantial harm to Plaintiff but chose to ignore such risk in issuing her various orders to officials. Sergeant Zambrano's actions caused Plaintiff to suffer injuries on October 6, 2016, because he could not physically comply with the order to be handcuffed with his hands behind his back. In addition, Sergeant Zambrano's actions ultimately led to Plaintiff suffering harm at the hands of those inmates who had learned about Plaintiff's child pornography convictions. Accordingly, it is respectfully recommended that Plaintiff's deliberate indifference claims against Sergeant Zambrano be retained.

### E. Personal Property (Due Process)

Plaintiff complains that Sergeant Zambrano's actions in ordering the confiscation and/or destruction of his personal property violates his constitutional rights. He further challenges the TDCJ rule which was used by prison officials to confiscate his personal property.

The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. The Supreme Court has held that a random and unauthorized intentional deprivation of property does not violate the Due Process Clause if the State provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). A claimant must

either take advantage of the available remedies or show that the available remedies are inadequate. *Hudson*, 468 U.S. at 534-35.

Texas law provides him with possible post-deprivation remedies. Texas law allows recovery of monetary damages for the loss of property that has been taken without authorization. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss*, 568 S.W.2d 413, 420-21 (Tex. Civ. App.– San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). In addition, state law specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property. *See* Tex. Gov't Code § 501.007.

Because Texas law provides an adequate post-deprivation remedy, the confiscation and/or destruction of Plaintiff's personal property does not state a violation of the Due Process Clause. *See Hudson*, 468 U.S. at 536 (noting that, even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy).

A prisoner-plaintiff may bring suit in federal court for property loss only if relief is denied in state court on grounds other than the merits of his claim. *See Thompson v. Steele*, 709 F.2d 381, 383 n.3 (5th Cir. 1983). The burden is on the inmate to show that the post-deprivation remedy is inadequate. *Myers*, 97 F.3d at 94. Plaintiff testified at the Spears hearing that he did not file a state court lawsuit either to seek return of his missing

property or money damages for lost property. Because Plaintiff has not pursued his state court remedies, he cannot allege that the post-deprivation remedy available to him is inadequate. Thus, Plaintiff's allegations regarding the confiscation and/or destruction of his personal property fail to state a cognizable constitutional claim.

To the extent that Plaintiff alleges his confiscation and/or destruction of personal property was due to Sergeant Zambrano's violation of TDCJ's written rules and policies, such allegations fail to state a due process claim. It is well-established that the violation of a TDCJ rule or regulation, without more, does not equate with a constitutional violation, and is not actionable. *Myers,* 97 F.3d at 95. Thus, even assuming that Sergeant Zambrano failed to follow written TDCJ rules and regulations and that this failure caused the loss and/or destruction of Plaintiff's property, this allegation fails to state a cognizable constitutional violation.

Lastly, Plaintiff challenges the specific TDCJ rule used by prison officials to confiscate his personal property as contraband. Plaintiff contends that the rule, which defines any item altered from its original condition to be contraband, gives prison officials too much discretion to confiscate personal property as contraband. Plaintiff, however, fails to allege any facts to suggest that the TDCJ rule is unconstitutional or has been unconstitutionally applied to him. Moreover, as discussed above, Plaintiff has adequate post-deprivation remedies in state court to pursue claims related to the taking of his personal property.

Accordingly, it is respectfully recommended that Plaintiff's due process claims related to the taking of his personal property be dismissed as frivolous and/or for failure to state a claim for relief.

### F.  Disciplinary Hearing (Due Process)

Plaintiff claims that Sergeant Zambrano subjected him to an improper disciplinary case (Disciplinary Case No. 20170041242), in which Plaintiff was charged with refusing to obey Sergeant Zambrano's direct orders.  Despite the fact his disciplinary conviction was overturned, Plaintiff fails to state a due process claim against Sergeant Zambrano for bringing the disciplinary case against him.  As an initial manner, Plaintiff's successful Step 2 grievance cured any error in the disciplinary proceeding.  *See Wilson v. Mossbarger*, No. 3:14-CV-244, 2017 WL 1449776, at *3 (S.D. Tex. Apr. 4, 2017) (citing *Ard v. Leblanc*, 404 F. App'x 928, 929 (5th Cir. 2010)).

Furthermore, the Supreme Court has held that due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incident of prison life, or to those that extend the length or duration of confinement.  *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995).  In other words, "[p]risoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest." *Hall v. Thaler*, No. H-07-0763, 2010 WL 883730, *6 (S.D. Tex. Mar. 11, 2010).

Plaintiff testified at the *Spears* hearing that the punishment imposed him in connection with his disciplinary conviction consisted of the loss of recreation and

commissary for 45 days, 45 days cell restriction, and a drop in his line class status. None of these sanctions imposed on Plaintiff constituted an "atypical and significant hardship" or otherwise adversely affected the duration of Plaintiff's sentence.[5] The imposition of commissary, recreation, and cell restrictions do not implicate a constitutionally-protected protected liberty interest. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Likewise, Plaintiff's reduction in line class fails to implicate due process concerns. *See Luken v. Scott*, 71 F.3d 192, 193-95 (5th Cir. 1995).

Plaintiff further complains about his placement in segregation while his disciplinary case was initiated and then pending. Plaintiff, however, did not receive as a specific punishment for his disciplinary conviction placement in administrative segregation. Rather, Plaintiff's testimony at the *Spears* hearing indicates that he was placed in administrative segregation for his own safety. Even if such placement was for punishment purposes in connection with his disciplinary proceeding, Plaintiff's short-term stay in administrative segregation does not constitute a deprivation of a constitutionally-protected liberty interest. *See Allums v. Phillips*, 444 F. App'x 840, 841 (5th Cir. 2011).

Accordingly, it is respectfully recommended that Plaintiff's due process claims against Sergeant Zambrano arising from his disciplinary proceeding and conviction be dismissed as frivolous and/or for failure to state a claim.

---

[5] Plaintiff could not recall at the *Spears* hearing whether his disciplinary conviction resulted in the loss of good time credits. He otherwise has presented no documents attached to his original complaint to indicate he was punished with the loss of good time credits.

## V. CONCLUSION.

For the reasons stated above, it is respectfully recommended that Plaintiff's deliberate indifference claims against Defendant Zambrano in her individual capacity be retained. It is respectfully recommended further that: (1) Plaintiff's claims for money damages against Defendants Putnam, Furr, Chapa, and Collier in their official capacities be dismissed as barred by the Eleventh Amendment; (2) Plaintiff's claims for injunctive relief against Defendants Zambrano, Putnam, Furr, and Chapa be dismissed as rendered moot by Plaintiff's transfer to another facility; and (3) Plaintiff's remaining claims against all Defendants be dismissed as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 3rd day of July, 2018.

*B. Janice Ellington* (signature)
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).